Jack Jeffrey McCRACKEN, Appellant,

v.

STATE of Alaska, Appellee.

No. 702.

Supreme Court of Alaska.

April 5, 1968.

Jack Jeffrey McCracken, pro se.

No appearance for appellee.

DIMOND, Justice.

On January 21, 1966 appellant filed a notice of appeal from a judgment of conviction of the crime of attempted burglary. On February 17, 1966 we granted permission to appellant to appeal in forma pauperis and appointed counsel to represent him. On October 31, 1966, court-appointed counsel informed this court by letter that "based on his study of the transcript and personal conversation with appellant, that in his considered opinion there exist no substantial grounds upon which an appeal may be urged."

Appellant was notified of counsel's conclusion and was requested by the clerk of this court to inform the court of the grounds on which he based his appeal. Appellant was furnished with a copy of the trial transcript which he retained for approximately two months and then returned to the clerk. Appellant has never communicated with the court in any manner so as to indicate the basis for his appeal.

On May 8, 1967 the United States Supreme Court decided Anders v. State of California.[1] In that case the California District Court of Appeal had appointed counsel to represent a party seeking an appeal from a conviction of possession of marijuana. Appointed counsel advised the court

1. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

by letter that there was no merit to the appeal. After refusing to appoint another attorney, the court affirmed the conviction. In a habeas corpus proceeding, the United States Supreme Court concluded that this action of the California court did not "comport with fair procedure" and lacked "that equality that is required by the Fourteenth Amendment."[2] The court went on to hold:

The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers does not reach that dignity. Counsel should, and can with honor and without conflict, be of no more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.[3]

On May 29, 1967 we requested court-appointed counsel for appellant to prepare and file with the court, pursuant to the requirements in Anders v. State of California, his brief "referring to anything in the record that might arguably support the appeal." Such a brief was filed on August 3, 1967, accompanied by counsel's motion to withdraw as appellant's attorney from further prosecution of the appeal. On August 25, 1967 appellant was sent a copy of counsel's brief and motion and was informed that he would have 30 days from receipt of the trial transcript within which to file his brief on appeal. The transcript was sent to appellant on September 29, 1967. Appellant retained the transcript until some time in November 1967 when it was returned to the clerk of this court. Appellant has never filed a brief nor has he indicated in any manner the grounds upon which he bases his appeal.

■ In his brief prepared pursuant to the *Anders* rule, appellant's counsel raised three points that might arguably support the appeal. The first dealt with appellant's contention that he had not committed the attempted burglary but instead was engaged at the time of the crime in attempting to prevent his companion, a co-defendant from breaking into a florist shop which was the scene of the attempted burglary. The point being made here is that there was insufficient evidence of guilt to support the jury's verdict. We find this point to have no merit. A review of the record convinces us that the evidence of guilt was convincing enough to persuade reasonable minded persons that there was no reasonable doubt as to appellant's guilt.

■ The second point has to do with the state's cross-examination of defense witnesses, Wagner and Thomas, as to certain gaming operations conducted by them in a house across the street from the florist shop that had been the scene of the attempted burglary. Counsel points out that appellant could argue that the trial court erred in allowing these witnesses to be cross-examined as they were, because the questions asked by the prosecuting attorney,

2. Id. at 741, 87 S.Ct. at 1398, 18 L.Ed.2d at 496.

3. Id. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498.

which dealt with gaming operations, were designed to elicit evidence of particular wrongful acts in violation of Civil Rule 43 (g) (11) [b].[4]

One of appellant's co-defendants who was tried with appellant for the same crime of attempted burglary and was found guilty was Charles Edward Smith. On Smith's appeal from the judgment of conviction he raised the same point as appellant regarding the state's cross-examination of the witnesses Wagner and Thomas. We held in the Smith case that the principal purpose of the cross-examination of such witnesses was to impeach their credibility by showing their bias and interest in the outcome of the case. We said:

> It is true that in so doing there was created an inference, if not proven, that the witnesses were violating the law by conducting a gambling game, and that this may have tended to impeach the witnesses by "evidence of particular wrongful acts", in violation of the prohibition contained in Civil Rule 43(g) (11) [b]. The question thus arises as to whether evidence is admissible where on the one hand it serves a legitimate purpose and on the other hand tends to accomplish that which is forbidden. We believe that the answer depends upon an advised judgment as to which of the two objectives is the primary one sought to be accomplished. From reading the transcript of the cross-examination of Thomas and Wagner we reach the conclusion that the main purpose of the questioning was to show the possibility of bias. The cross-examination of those witnesses as to details of the business operation they were engaged in was not so extensive as to lead us to believe that the main objective of the questioning was to impeach by evidence of particular wrongful acts, that is, gambling. When the main objective to be served by cross-examination is legitimate and permissible as it is here, then the fact that particular wrongful acts are also suggested or established would be merely incidental and should not prevent the primary and legitimate objective of impeachment by showing bias from being accomplished. [Footnotes omitted] [5]

█ What we said in *Smith* disposes of appellant's second point. It is true that unlike co-defendant Smith there was no evidence indicating that appellant was a business partner of Thomas and Wagner in the operation of the card game room, and therefore that the question of the witnesses' bias and interest in the outcome of the case did not relate to appellant. But it did relate to Smith, and since he was being tried jointly with appellant, the state had the right to interrogate the witnesses as it did, regardless of whether it would have been able to justify cross-examination of such scope had appellant been the sole defendant in the case. We find no error in admitting the evidence brought out in the cross-examination of the witnesses Wagner and Thomas.

█ As his third and final point that might arguably support the appeal, appellant's counsel suggests that the prosecuting attorney's final argument to the jury may have been improper so as to warrant a mistrial. Counsel points out, however, and correctly so that defense counsel made no objections to the prosecutor's final argument, and thus failed to preserve this ques-

4. Crim.R. 26(a) states in part:
   The admissibility of evidence shall be governed by Civil Rule 43 * * * .
   Civ.R. 43(g) (11) [b] provides:
   A witness may be impeached by the party against whom he was called by contradictory evidence, or by evidence that his general reputation for truth is bad, or that his moral character is such as to render him unworthy of belief. He may not be impeached by evidence of particular wrongful acts, except that it may be shown by the examination of the witness or the record of a judgment that he has been convicted of a crime.

5. Smith v. State, 431 P.2d 507, 509–510 (Alaska 1967).

tion for review. As we said in Veal v. Newlin, Inc.:

> [C]ounsel cannot remain silent, interpose no objections, and after a verdict has been returned seize for the first time on the point that comments to the jury were improper or prejudicial.[6]

We nevertheless consider the point in order to determine whether it is necessary for us to take some action in order to effect substantial justice or to prevent a denial of appellant's fundamental rights.[7] We have reviewed the prosecuting attorney's final argument to the jury and find in it no impropriety which would call for a new trial.

Our review of the record convinces us that appellant has had a fair trial. The judgment is affirmed.

RABINOWITZ, Justice (dissenting in part).

In the event this court finds any of the legal points raised by counsel on behalf of the indigent are "arguable on their merits (and therefore not frivolous)," then under Anders v. State of California[1] we must, prior to decision, "afford the indigent the assistance of counsel to argue the appeal." In my opinion, appellant's second point concerning the extent of the cross-examination of witnesses Wagner and Thomas is arguable on its merits. It follows that appellant should have been afforded the assistance of counsel to argue this question prior to this court's decision thereon.

In Smith v. State[2] we said:

> To be admissible evidence must be relevant, and to be relevant it must tend to

establish a material proposition. The cross-examination of Thomas and Wagner tested and amplified their testimony on direct examination, that they and appellant were engaged together as partners in a business enterprise, viz., operating a recreation, and card game room. This was material, not because of the type of operation engaged in, but because these men were engaged in a business enterprise as partners. From this fact a jury, in judging the credibility of the witnesses, could believe that Thomas and Wagner would have friendly feelings for appellant, and because of such feelings would be inclined to slant their testimony in appellant's favor. The possible existence of such partiality, flowing from the business relationship of appellant and the two witnesses, may be shown by evidence in order to establish bias and thus impeach the witnesses' credibility.

Unlike co-defendant Smith, there was no evidence in the record indicating that appellant McCracken was a business partner of the witnesses Thomas and Wagner in the operation of a recreation-card game room. In fact, the record is devoid of any reference to any business association between appellant McCracken and the two witnesses. Once the "bias," "interest" underpinning of the Smith decision is removed concerning prosecution's cross-examination of Thomas and Wagner, then in my view an issue, arguable on its merits, is presented.

I concur in the court's disposition of the two remaining points in this appeal.

6. 367 P.2d 155, 157 (Alaska 1961).

7. Goreson v. State, 432 P.2d 326, 327 (Alaska 1967).

1. 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, 498 (1967).

2. 431 P.2d 507, 509 (Alaska 1967) (footnotes omitted).