**Gladys PORE, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 830.**

Supreme Court of Alaska.

March 28, 1969.

Martin A. Farrell, Jr., Hahn, Jewell & Farrell, Anchorage, for appellant.

Daniel A. Gerety, Asst. Dist. Atty., and Douglas B. Baily, Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND, and RABINOWITZ, JJ.

RABINOWITZ, Justice.

Appellant appeals from the superior court's denial of her Criminal Rule 35(b) motion for post conviction relief.

In July of 1963 an indictment was returned against appellant in which she was charged with four separate felony counts of uttering and passing forged checks in violation of AS 11.25.020. After appellant's indigency was established, the superior court appointed Mr. Bay Clark to represent her. A jury thereafter found appellant guilty of three of the forgery counts. The superior court sentenced appellant to concurrent seven-year terms of imprisonment which were made to run con-

secutively to a five-year term of imprisonment which appellant received in 1961.[1]

The matter was initially brought to the attention of this court when, in January 1967, appellant filed a pro se application for a writ of habeas corpus. We thereafter sent the matter to the superior court with directions that appellant's application for a writ of habeas corpus be considered as a Criminal Rule 35(b) motion for post conviction relief.[2] We further directed that if the superior court determined a hearing was required to resolve factual issues, then such hearing should be conducted in accordance with Thompson v. State.[3]

Following our remand, the superior court appointed Mr. James Gilmore to represent appellant. Before the superior court appellant's counsel filed a "Memorandum in Support of Petition for Writ of Habeas Corpus." There the issue of whether appellant had been denied the right to appeal from the judgment and commitment pertaining to the three forgery convictions was raised for the first time.[4] In this memorandum, it was stated in part that:

> In a letter dated June 14, 1967, in response to a question put to her by counsel appointed to represent her in this action, Mrs. Pore stated that she asked Mr. Clark to appeal her conviction.[5]

Counsel for appellant then argued that appellant's failure to request that new counsel be appointed to prosecute her appeal "upon Mr. Clark's refusal to notice an appeal did not constitute waiver by the defendant of her right to take an appeal and have the court appoint counsel on appeal." In its memorandum in opposition, the state contends that appellant failed to demonstrate there were any "arguable" points which would merit institution and consideration of an appeal.[6] The state further argued that appellant's application of post conviction relief did not contain any allegation that she had requested her attorney to file an appeal on her behalf.

---

1. It appears that appellant committed the three 1963 forgeries while she was on parole from the five-year sentence imposed in 1961.

2. Crim.R. 35(b), then in effect, read in part as follows:
   An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this subdivision, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or its successor, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

3. 412 P.2d 628 (Alaska 1966).

4. In her pro se application, appellant asserted the following ground in support of her effort to obtain post conviction relief: (1) that she was denied the right to have witnesses in her behalf; (2) that the "Court allowed testimony of an unknown person to be used against her"; (3) that she "was not allowed to cross-examine [her] * * * accuser"; and (4) that she did not have the benefit of effective assistance of counsel.

5. In this same memorandum, appellant's counsel makes the further accurate statement that, "The file contains neither a motion for new trial nor a notice of appeal."

6. Appellee's argument here is based on Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498, rehearing denied, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967). There the question before the Supreme Court concerned the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has concientiously determined that there is no merit to the indigent's appeal. In Anders the court said in part:
   Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.
   See McCracken v. State, 439 P.2d 448 (Alaska 1968).

Thereafter, the superior court entered an order denying appellant's application for post conviction relief. Concerning appellant's assertion that she had been denied the right to appeal from her forgery convictions, the trial court stated in his order of denial that he wrote to Mr. Bay Clark, appellant's court-appointed trial counsel, and that:

> As to the second specific question I asked Mr. Clark concerning whether Mrs. Pore has asked him to appeal her case, he stated that Mrs. Pore in open court, after the verdict was rendered, stated that she was dissatisfied with the way that Mr. Clark had handled her case. He said that she felt quite strongly against him and that she never at anytime asked him to appeal her case.

The trial court then went on to specifically hold that "Gladys Pore was not deprived of the right to take an appeal from her conviction."[7] This appeal followed the superior court's denial of her application for post conviction relief.

The superior court's ruling that appellant was not deprived of her right to appeal has been made the sole basis of appellant's appeal to this court.[8] In order to disclose the basis for our disposition of this appeal, a more detailed reference to the sentencing proceedings is appropriate at this point. At the November 4, 1963, sentencing, in the course of exercising her right of allocution, appellant stated in part:

> [I]n the first place * * * Your Honor, I haven't been properly represented.
>
> *   *   *   *   *   *
>
> Well, ah, Your Honor, I want to appeal the case and I'm not guilty.
>
> *   *   *   *   *   *
>
> Well, this is my life and I do think I should—I need a chance to appeal this case and prove myself * * *. And if I was guilty I wouldn't fight this Court one minute * * *

Immediately prior to imposing sentence, the trial judge said in part:

> Now, you have said that you want to appeal this case, that's your privilege, if you wish to do so. Frankly, I don't mind saying that I can't see any possible ground on which the Supreme Court will be likely to reverse this conviction, but that is not up to me, that's up to the Supreme Court. And if you wish to appeal, you may do so.

After sentence was pronounced, the following exchange took place between the court and the appellant:

> I'll set up the time for signing the written judgment Friday afternoon at 4:00 o'clock and I'll ask them to bring you here at that time. I cannot conscientiously give you a forma pauperis appeal in this case.[9]

---

7. The trial court also determined that there was no merit in the four additional grounds which were advanced by appellant in support of her quest for post conviction relief. Additionally, the court concluded that it was not necessary that appellant be returned to Alaska for a hearing, and that the matter could be determined without conducting a hearing.

8. At the conclusion of his statement of facts, appellant's counsel makes the following statement in his brief:
   > As the issue, whether appellant was deprived of her right to appeal her conviction, predominates over all other issues for purposes of this appeal, and which issue, if determined in appellant's favor, will eventually allow for deter-

   mination of the other issues, that issue will be the basis of this appeal, other issues being treated indirectly, only as they relate to this main issue.

9. Supreme Ct.R. 43(a) in effect at the time appellant was sentenced provided that:
   > An appeal on petition for review may not be taken in forma pauperis if the superior court certifies in writing that it is not taken in good faith.

   Supreme Ct.R. 43(c), which was also applicable at the time here in question, provided:
   > In criminal matters the superior court may appoint an attorney to represent any such person unable to employ counsel.

MRS. PORE: No, I don't no forma pauperis appeal in this case, Your Honor. Ah, people up from my church come up—an organization I belong to and I talked with them and they had talked to several people.

THE COURT: That's very excellent. I would prefer—would much prefer if you're able to do so that you take your appeal on your own rather than asking the State to do so.

The trial judge then informed appellant that she must proceed promptly in order to take an appeal and that she "immediately make arrangements to get your attorney and get your appeal papers filed so that you will not lose your rights."

Three days later, on November 8, 1963, appellant appeared in court without her court-appointed counsel, Mr. Clark, who was unable to attend.[10] At this time appellant once again informed the court of her intention to appeal and was again reminded of the importance of filing a timely appeal.[11] In answer to an inquiry by the court, appellant replied that Mr. Duggar was going to file the appeal for her. At this point the court said:

Now you have as I remember a period of 10 days from the time I sign the judgment to file a notice of appeal.

A significant aspect of this appeal is that in his brief and oral argument to this court counsel for appellant relies upon certain new facts which were not brought to the attention of the trial court prior to the time it ruled upon appellant's motion for post conviction relief. In regard to this facet of the appeal, appellant asserts that she was physically removed from the State of Alaska on November 13, 1963, some five days in advance of the expiration date of the applicable 10-day appeal period limitation.[12] Appellant's counsel, before this court, also stated that "Mr. Lloyd Duggar, Anchorage attorney whom appellant stated would handle her appeal, has informed the writer that he was never engaged by appellant, for reason that appellant was completely without funds."[13] Appellee's position is that these additional facts are not properly before this court, and that this appeal should be resolved on the basis of the record which was before the trial court. Appellee further urges that this additional evidence should be presented to the trial court by means of a second motion under Criminal Rule 35(b). Additionally, appellee argues that appellant "intelligently, understandingly, and affirmatively waived any right she may have had to a court-appointed appellate counsel."[14]

10. At the November 5, 1963, proceedings, appellant had agreed that the entry of a formal judgment and commitment could be accomplished without her counsel being present. The record shows that Mr. Clark was present at the November 5, 1963, proceedings.

11. Appellant informed the court that the appeal would be filed Monday, November 11, 1963.

12. As to appeals in criminal cases, Supreme Ct.R. 19(b) provides in part:
An appeal by a defendant may be taken within ten (10) days after the entry of the judgment appealed from * * *. See Dwyer v. State, 449 P.2d 282 (Alaska 1969), where authority for the out-of-state incarceration of Alaskan prisoners is discussed.

13. Appellant's counsel further states in regard to these new allegations that:

The writer realizes that these facts are not a part of the record, and that Judge Davis did not have the opportunity of knowing these facts, which knowledge might have influenced that court to a different decision. The writer suggests that this court accept these facts, upon substantiation, if not opposed, thus precluding the necessity of a trial court hearing on these points.

14. In support of this position, appellee asserts that: (1) appellant specifically declined court-appointed counsel; (2) appellant was definitely made aware of her right to have an attorney represent her and she cannot now claim that she was ignorant; and (3) appellant did not request court-appointed counsel within the 10-day appeal period.
Along these same lines, appellee contends waiver is found in "appellant's explicit representation to the court that she did

In Knaub v. State [15] we said the following in regard to a Criminal Rule 35(b) motion for post conviction relief:

> If the lower court could determine conclusively that petitioner was entitled to no relief after an examination of the files and records of the case, then it acted properly in denying the petition without hearing. The sole question before an appellate tribunal when confronted with an order denying, without hearing, a Criminal Rule 35(b) motion is whether the prisoner in his application for relief made such a showing as to require a hearing before the lower court.[16]

■ In the case at bar we are of the opinion that the superior court correctly determined that appellant's showing in regard to her deprivation of the right to appeal claim did not require the holding of an evidentiary hearing. Our study of the case has led us to the further conclusion that the lower court could conclusively determine that appellant was entitled to no relief on the basis of the material then in the record and files at that time. Appellant's generalized statement that she "asked Mr. Clark to appeal her conviction" did not warrant the holding of an evidentiary hearing. We reach this conclusion in light of both the portions of the sentencing proceedings we have heretofore set forth and Mr. Clark's statement that appellant "never at any time asked him to appeal her case."

Before an evidentiary hearing was required under Criminal Rule 35(b) in this context, it was incumbent upon appellant to furnish the sentencing court with a detailed showing as to the circumstances pertaining to her purported request to Mr. Clark to appeal her case. Absent here is any indication as to the time, location, manner, and circumstances under which appellant requested Mr. Clark to appeal her conviction.

■ Our holding today does not preclude appellant from making a second application for post conviction relief.[17] In this second application, appellant will be enabled to present the "new" evidence which was contested in this appeal. More specifically, we have reference to appellant's assertion that she was transported out of the State of Alaska for purposes of out-of-state incarceration, prior to the expiration of the 10-day period within which she was required to file a notice of appeal. In this regard, appellant should disclose what impact her physical removal from the State of Alaska had on her ability to file a timely notice of appeal. In this same vein, appellant's showing should also detail the facts pertaining to her attempts, during the period of time between the imposition of sentence and her alleged removal from Alaska, to engage the services of Mr. Duggar.

Affirmed.

not need a state-appointed counsel, that she had an attorney already, that she was receiving assistance in obtaining that attorney, that she knew there was a limited time for appeal, and that her appeal would be taken in the required period of time."

15. 443 P.2d 44, 50 (Alaska 1968) (footnotes omitted).

16. At the times in question, Crim.R. 35 (b), in part, provided:

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the State District Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

17. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).